**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** ***physically received*** **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2016**

# In the Court of Appeals of Georgia

A16A1199. BISNOTT v. NORFOLK SOUTHERN RAILWAY.

PHIPPS, Presiding Judge.

After injuring his back at work, Delroy Bisnott sued his employer, Norfolk Southern Railway, for damages under the Federal Employers' Liability Act[1] ("FELA") and the Federal Safety Appliance Act[2] ("FSAA"). The trial court granted summary judgment to Norfolk Southern, and Bisnott appeals. For reasons that follow, we reverse.[3]

---

[1] 45 U.S.C. § 51 et seq.

[2] 49 U.S.C. § 20301 et seq.

[3] Norfolk Southern has moved for permission to file a supplemental brief, attaching its proposed supplemental brief to the motion. In resolving this appeal, we reviewed the proposed brief and found the arguments unavailing. Accordingly, Norfolk Southern's motion to file is DENIED.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[4] We review the grant of summary judgment de novo, construing the evidence and all reasonable conclusions and inferences therefrom in the light most favorable to the nonmovant.[5]

So viewed, the record shows that Norfolk Southern employed Bisnott as a train conductor. On January 23, 2008, Bisnott was working with an engineer and a brakeperson, preparing and coupling train cars for transport. The United States Supreme Court has described the coupling process as follows:

> Railroad cars in a train are connected by couplers located at both ends of each car. A coupler consists of a knuckle joined to the end of a drawbar, which itself is fastened to a housing mechanism on the car. A knuckle is a clamp that interlocks with its mate, just as two cupped hands – placed palms together with the fingertips pointing in opposite directions – interlock when the fingers are curled. When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars.[6]

---

[4] *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 583 (1) (a) (748 SE2d 846) (2013).

[5] Id.

[6] *Norfolk & Western R. Co. v. Hiles*, 516 U. S. 400, 401-402 (116 SCt 890, 134 LE2d 34) (1996).

Although the process anticipates automatic coupling, some manual involvement by railroad employees may be necessary. The Supreme Court explained:

> The drawbar extends the knuckle out from the end of the car and is designed to pivot in its housing, allowing the knuckled end some lateral play to prevent moving cars from derailing on a curved track. As a consequence of this lateral movement, drawbars may remain off center when cars are uncoupled. This misalignment, if not corrected, may prevent cars from coupling by allowing the knuckles to pass by each other. To ensure proper coupling, railroad employees must realign drawbars manually.[7]

As the conductor, Bisnott oversaw the coupling on January 23, 2008, and several train cars were coupled without incident. He then noticed a misaligned drawbar on a car that needed to be coupled. Like all Norfolk Southern conductors, Bisnott had been trained to straighten a misaligned drawbar manually using the "backup method," in which the employee "plac[es] his back against [the drawbar] and use[es] his lower body to move it into place." The railroad instructed employees not to overexert themselves while aligning a drawbar. Bisnott's supervisor testified: "If an employee cannot move a drawbar using reasonable effort, then the employee is required to seek assistance from a fellow employee."

---

[7] Id. at 402.

3

Bisnott described his initial effort to move the drawbar as follows:

I went over – same thing that we were taught to do – and got my back behind it. One arm on one side of the knuckle, the other one on the draw[bar]. And using your legs for leverage, pushed on it and pushed up and pushed at the same time with your back against it to try to get it moved. So you're trying to kind of lift up on it a little bit and push at the same time. And I did that at first, and it didn't move.

When the drawbar failed to move, Bisnott considered asking Julia Wise, the crew's brakeperson, to help him. But, he asserted: "[S]he's a female. And I'll say she didn't look like she was a person to be lifting a draw[bar] knuckle. . . . And so I went back and tried to exert a little more pressure to see if I could get it moved again." As he applied additional pressure, he felt pain in his lower back. Although Bisnott finished moving the drawbar, coupled the car, and completed his other tasks, he was in excruciating pain by the end of the day.

Bisnott told his supervisor about the injury and completed an incident report. Following the incident report, a Norfolk Southern mechanic inspected the train car and coupler at issue. The mechanic found that the coupler mechanism, including the drawbar, was in good condition with "no defects," and he was able to move the drawbar easily using the backup method.

Bisnott sued Norfolk Southern under FELA and the FSAA, alleging that the drawbar was defective and the workplace was unsafe, causing him injury and resulting damages. The trial court granted summary judgment to Norfolk Southern on both claims. This appeal followed.

1. FELA "is a federal statute that gives a railroad employee the right to sue his employer in state or federal court for injury or death resulting in whole or in part from the railroad company's negligence."[8] A railroad has a duty under FELA "to use reasonable care in furnishing its employees with a safe place to work."[9] To prevail on a FELA claim, a railroad employee must prove the common law elements of negligence – duty, breach, foreseeability, and causation.[10]

Norfolk Southern did not question below that it owed a duty to Bisnott. It instead argued – and the trial court found – that Bisnott had not satisfied the remaining FELA elements as a matter of law. We disagree.

(a) *Breach of duty.* A FELA claimant establishes breach "by demonstrating that the railroad failed to observe that degree of care which people of ordinary prudence

---

[8] *Zeagler*, supra at 586 (2) (citation and punctuation omitted).

[9] Id. at 587 (2) (a) (citation and punctuation omitted).

[10] Id. at 586 (2).

5

and sagacity would use under the same or similar circumstances."[11] Bisnott asserted that Norfolk Southern breached its duty of care by failing to provide a properly working, nondefective drawbar. He offered expert testimony that a coupler mechanism's drawbar "should easily and smoothly move laterally" with human force. His expert further asserted that "[a] coupler which fails to easily and smoothly move laterally upon application of appropriate and reasonable human force does not perform its intended function[,] . . . is defective[,] . . . and is a hazard to transportation employees." Moreover, Bisnott testified that he was injured while using "appropriate" force to move the drawbar. Such testimony raised material questions of fact as to defect and breach.[12]

Bisnott also alleged that Norfolk Southern did not give him adequate tools to safely straighten the drawbar. In support, Bisnott presented evidence that alternative tools/methods for realigning a drawbar were available in the industry and at certain Norfolk Southern train yards, but not offered to him. Unlike the backup method, at

---

[11] Id. at 593 (2) (c) (citation and punctuation omitted).

[12] See id. ("Proving breach . . . requires the plaintiff to produce evidence that (1) establishes what precautions ordinary care required in the circumstances presented by his case and (2) demonstrates that the defendant did not take such reasonable precautions.").

6

least one of these alternatives allowed an employee to realign a drawbar without placing stress on the employee's back. This evidence created a jury question regarding the reasonableness of the backup method – the procedure Norfolk Southern required Bisnott to use for drawbar realignment.[13]

(b) *Foreseeability.* "A plaintiff suing under FELA must also establish the reasonable foreseeability of harm."[14] Even if a defective condition exists, therefore,

---

[13] See *Rodriguez v. Delray Connecting R.*, 473 F2d 819, 821 (6th Cir. 1973) ("Generally a railroad's responsibility in this regard is to provide tools that are reasonably safe and suitable for the use of the employee. What is 'reasonably' safe is affected to some extent by the alternatives.") (citation omitted); *Gorman v. Grand Trunk Western R.*, 2009 U.S. Dist. LEXIS 69562, at *17-18 (E.D. Mich. 2009) ("[W]hether any given arrangement is reasonably safe cannot be determined . . . without any consideration of possible alternative arrangements. Instead, whether the conditions of a workplace are reasonably safe depends on a comparison of the marginal benefits and costs of an available safer alternative."); *Edsall v. CSX Transp.*, 2007 U.S. Dist. LEXIS 94900, at *10-11 (N.D. Ind. 2007) ("[E]vidence of alternative methods can be helpful in determining whether a reasonable and prudent railroad would have required use of the method that injured its employee."); *Gallagher v. BNSF R. Co.*, 829 NW2d 85, 93 (Minn. App. 2013) (leaving for jury question of whether railroad breached its duty of care under FELA by "failing to make available to its employees certain assistive devices, and by failing to train its employees in the use of such devices"); *Rice v. BNSF R. Co.*, 346 SW3d 360, 369, n. 8 (Mo. App. 2011) ("If there are two different methods of work or pieces of equipment that could be used to perform a task and an employee is injured performing the task by the method or equipment selected by the railroad, then the issue of whether the alternative method or equipment should have been used is normally one for the jury.").

[14] *Zeagler*, supra at 592 (2) (b) (citation and punctuation omitted).

7

it will not result in liability unless the railroad has some knowledge – either actual or constructive – of the defect.[15]

Norfolk Southern argued below that it lacked knowledge of any defect in the drawbar, precluding a foreseeability finding. Bisnott, however, offered expert evidence that lubrication is necessary for a drawbar to function properly. Moreover, the mechanic who inspected the coupler after Bisnott's injury testified that the drawbar was not lubricated, explaining that "you're not supposed to lubricate [it]" and that, to his knowledge, Norfolk Southern had stopped lubricating coupler mechanisms.

We recognize that the mechanic later amended this testimony, asserting that a photograph of the railcar shows that "there was lubricant on the drawbar." But the record does not establish when the referenced photograph was taken. And even if the photograph revealed the coupler's condition at the relevant time, it does not unequivocally demonstrate that the drawbar was lubricated.[16] Rather than resolving

___

[15] See *Georgia Southern & Florida R. Co. v. Peters*, 284 Ga. App. 139, 145 (2) (643 SE2d 786) (2007) ("[A]n employer is not liable [under FELA] if it has no reasonable way of knowing that a potential hazard exists.") (citation and punctuation omitted).

[16] Compare *Farmer v. Wheeler/Kolb Mgmt. Co.*, 224 Ga. App. 834, 835 (482 SE2d 475) (1997) ("[B]lack and white photograph contained in the appellate record

8

the foreseeability issue, the mechanic's contradictory testimony raised jury questions regarding the existence of lubrication, whether the drawbar was able to perform as intended, and Norfolk Southern's knowledge of the alleged defect.[17] Furthermore, Norfolk Southern knew about alternatives to the backup method for drawbar realignment, including an alternative that placed no strain on employees' backs. Foreseeability, therefore, was a jury issue.

(c) *Causation*. FELA's causation requirement is "extremely relaxed."[18] A claimant survives summary judgment by "producing evidence from which the jury could justify with reason the conclusion that employer negligence played *any part,*

---

clearly show[ed] that the concrete bumper [on which plaintiff tripped] and the asphalt parking lot [were] made of sharply contrasting materials."); *Cowan v. Waffle House*, 217 Ga. App. 273, 274 (456 SE2d 762) (1995) (photographs showed that allegedly hazardous condition in parking lot was clearly visible).

[17] See *Zielinkski v. Clorox Co.*, 215 Ga. App. 97, 100 (3) (a) (450 SE2d 222) (1994) ("The truth of the sworn affidavit is a question of fact for the jury, and any inconsistent statement or other evidence going to its verity may be considered by the jury to determine its truth and weight. Such inconsistencies are construed favorably to a respondent to a motion for summary judgment and where there is an apparent inconsistency in any person's testimony and statements, the matter should be submitted to the jury.").

[18] *Zeagler*, supra at 594 (2) (d).

9

*even the slightest*, in producing the injury or death for which damages are sought."[19] Despite this relaxed standard, Norfolk Southern argues that it was entitled to judgment as a matter of law because Bisnott proximately caused his own injuries. The railroad claims that Bisnott should have asked another crew member for help moving the drawbar when he was unable to realign it on his first attempt. According to the railroad, Bisnott violated Norfolk Southern's instructions regarding the backup method, thereby injuring himself.

The evidence shows that Norfolk Southern instructed employees (1) to use only reasonable effort when aligning a drawbar, (2) not to overexert themselves, and (3) to seek assistance if more than reasonable effort was needed. Without dispute, Bisnott did not request assistance after he initially failed to move the drawbar, choosing instead to try to realign it a second time. He testified, however, that he used appropriate effort in this second attempt, force that he did not believe would result in injury. Construed favorably to Bisnott, Norfolk Southern's instructions did not forbid a second attempt. They only prohibited Bisnott from overexerting himself. And Bisnott asserted that he used appropriate force in both his first and second realignment efforts.

---

[19] Id. (citation and punctuation omitted; emphasis in original).

Given Bisnott's testimony, material questions of fact exist as to his compliance with the backup method. These questions, as well as jury issues regarding the alleged defect, Norfolk Southern's knowledge of the defect, and the reasonableness of the backup method, precluded summary judgment on the FELA claim.[20]

2. Pursuant to the FSAA, railroad cars must be equipped with automatic couplers that allow cars to "couple on impact."[21] The statute "creates an absolute duty requiring not only that automatic couplers be present, but also that they actually perform."[22] A railroad is liable for employee injuries caused by a violation of the FSAA.[23] To recover under this strict liability framework, a claimant "need only show

---

[20] See *Phelps v. CSX Transp.*, 280 Ga. App. 330, 334 (634 SE2d 112) (2006) (When adopting FELA, Congress "was particularly concerned that the issues of whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence.") (citation and punctuation omitted); *Cook v. Seaboard System R.*, 184 Ga. App. 838, 840 (2) (363 SE2d 56) (1987) (same).

[21] *Hiles*, supra at 408. See also 49 U.S.C. § 20302 (a) (1) (A).

[22] *Hiles*, supra at 408-409 (citations omitted).

[23] Id. at 408.

(1) the statute was violated; and (2) [he] suffered injuries resulting in whole or in part from the defective equipment."[24]

Bisnott asserted that Norfolk Southern violated the FSAA because the drawbar he tried to straighten was defective, failed to align as required, and did not function as intended. The trial court rejected this claim on summary judgment, finding no record evidence that the coupler mechanism was defective or unsafe. As noted above, however, Bisnott presented expert testimony that part of the coupler mechanism – specifically, the drawbar – did not perform as intended and was defective. Material questions of fact regarding defect, therefore, remain for the jury.[25]

Relying on the United States Supreme Court's opinion in *Norfolk & Western R. Co. v. Hiles*,[26] Norfolk Southern argues that summary judgment nevertheless was appropriate because employees who suffer injury while preparing a train car for coupling have no claim under the FSAA. We disagree. In *Hiles*, the Supreme Court rejected an employee's argument "that a misaligned drawbar, by itself, is a violation

---

[24] *Richards v. Consolidated Rail Corp.*, 330 F3d 428, 432 (6th Cir. 2003) (citation and punctuation omitted).

[25] See id. (defect under FSAA "may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner").

[26] Supra.

12

of the [F]SAA."[27] In doing so, it refused to find that "a misaligned drawbar is, as a matter of law, a malfunctioning drawbar."[28] But it did not preclude a claim involving a defective or malfunctioning drawbar.[29] And nothing in *Hiles*'s language suggests that injuries sustained while taking steps required for automatic coupling necessarily fall outside of the FSAA.[30]

Bisnott testified that the drawbar was substantially misaligned "all the way in the corner" and needed to be re-positioned for coupling. His expert also testified that drawbars must align for train cars to couple automatically upon impact. Although Bisnott eventually realigned the drawbar and successfully coupled the car, at least some evidence indicated that he was injured when the drawbar malfunctioned. Under these circumstances, a jury must determine whether the coupling mechanism

---

[27] Id. at 412. In *Hiles*, the claimant did not allege or attempt to prove that the drawbar at issue was defective. Id. at 409, n. 12.

[28] Id. at 412.

[29] See id. at 409 ("[T]he failure of equipment to perform as required is sufficient to create [F]SAA liability.") (citation omitted).

[30] See, e.g., id. at 410, n. 14 (noting that, "at least in this case, the absence of a failed coupling attempt is of no consequence").

performed as required by the FSAA.[31] The trial court, therefore, erred in granting Norfolk Southern summary judgment on this claim.

*Judgment reversed. Peterson, J., concurs. Dillard, J., concurs in judgment only.*

---

[31] See *Richards*, supra ("If the plaintiff establishes that the [safety appliance governed by the FSAA] functioned inefficiently at the relevant time, it is irrelevant that the appliance worked efficiently both before and after the occasion.") (citing *Myers v. Reading Co.*, 331 U. S. 477 (67 SCt 1334, 91 LE 1615) (1947)); *George v. Burlington Northern R. Co.*, 1994 U.S. Dist. LEXIS 13497, at *11-16 (N.D. Ill. 1994) (railroad employee was injured while realigning drawbar that was unusually difficult to move; although employee eventually succeeded in coupling cars, questions of fact remained as to whether defect existed in coupling mechanism).

# In the Court of Appeals of Georgia

A16A1199.  BISNOTT v. NORFOLK SOUTHERN RAILWAY.

DILLARD, Judge.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).