**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1201. SMITH v. CSX TRANSPORTATION, INC.

MCMILLIAN, Judge.

Earl Smith appeals the trial court's grant of summary judgment to CSX Transportation, Inc. ("CSX"), asserting that the trial court erred in (1) excluding the testimony of his expert witness, Dr. Arthur Wardell, and (2) granting summary judgment to CSX on his claims brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. For the reasons that follow, we affirm.

We review a grant of summary judgment de novo, construing the evidence and all reasonable conclusions and inferences therefrom in the light most favorable to the nonmovant. See *Bisnott v. Norfolk Southern R.*, 338 Ga. App. 897, 897 (792 SE2d 436) (2016). Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. Id.

So viewed, the record shows that Smith began working for CSX in 1980 as a laborer in the bridges and buildings department. Over the course of his 32-year career with CSX, Smith worked in a variety of different roles, including as a bridge helper, flagman, assistant foreman, foreman, and track inspector. Smith's duties with each job varied. For example, when Smith worked as a flagman – in 1981, at various times from 1996 to 1999, and again from 2001 until 2006 – he was responsible for directing rail traffic and overseeing contract workers but was not engaged in physical labor. However, when Smith worked as a track inspector, including from 1999 to 2001 and 2006 to 2012, his duties included pulling and driving spikes and changing rails and bolts in addition to inspecting the track. According to Smith, this work hurt his back, his hands, and his knees.[1] And in separate, prior lawsuits, he settled claims against CSX related to a back injury, a right knee injury, and carpel tunnel syndrome in both hands.[2]

---

[1] Smith also complained that the pull bars, sledge hammers, impact wrenches, rail saws, rail drills, and hydraulic system tools were antiquated and made the work more difficult. However, at certain points during his career, CSX provided updated tools, such as switching out the derrick crane to a boom truck, the push cars for high rail trucks, and the crosscut saws for chainsaws.

[2] Smith subsequently further injured his back when he fell out of a deer stand and continues to experience chronic back pain. He also continues to have right knee pain that prevents him from performing his job duties and will need additional knee

In 2009, Smith began experiencing pain in his right shoulder and eventually underwent surgery in July 2010. He returned to work following surgery but then began experiencing the same pain in his left shoulder, which led him to leave CSX on occupational disability in February 2012. In July 2012, Smith filed this FELA lawsuit, alleging that he was exposed to "harmful repetitive motion, cumulative trauma, awkward work postures, vibration, and other harmful conditions" that caused injury to his shoulders and right foot.[3] In support of his claims, Smith offered the testimony of his specific causation expert, Dr. Wardell, who opined that Smith's occupational duties, including his use of heavy tools and other types of work, were a significant factor in causing the acromioclavicular arthritis[4] in his left and right shoulders, which led to his occupational disability. Following Dr. Wardell's deposition, CSX moved to exclude his testimony and for summary judgment. The trial court granted CSX's motion to exclude Dr. Wardell after finding that, although Dr. Wardell is a qualified orthopedist whose testimony is relevant, his opinions in this

surgery in the future.

[3] Smith originally also sought recovery for an injury to his right foot, but has abandoned that claim on appeal, and we will not address that portion of Dr. Wardell's opinions.

[4] Acromioclavicular arthritis is a type of osteoarthritis or degenerative arthritis.

3

case are not reliable. And because Smith was therefore unable to provide evidence of specific causation, the trial court granted summary judgment to CSX. This appeal followed.

1. In his first enumeration of error, Smith asserts that the trial court erred in excluding Dr. Wardell's testimony. At the outset, we note that "[t]he determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 642 (1) (697 SE2d 770) (2010).

a. Smith first contends that the trial court erred in excluding Dr. Wardell's testimony because FELA relaxes the standard of causation that would otherwise apply in a personal injury case and consequently lowers the standard by which trial courts assess expert witness testimony. We disagree. "The Federal Employers' Liability Act is a federal statute that gives a railroad employee the right to sue his employer in state or federal court for injury or death resulting in whole or in part from the railroad company's negligence." *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 586 (2) (748 SE2d 846) (2013). To bring a FELA claim, the plaintiff must prove each of the traditional common law elements of negligence: duty, breach, foreseeability, and

4

causation. See id. Under FELA, however, the causation standard is relaxed, and "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." (Citation and punctuation omitted.) *Norfolk Southern R. Co. v. Schumpert*, 270 Ga. App. 782, 784 (1) (608 SE2d 236) (2004). "Nevertheless, some evidence of causation is required; FELA is not a no-fault workers' compensation statute." Id. And, "[i]n all FELA lawsuits, the plaintiff bears the burden of proving medical causation." (Citation omitted.) *Lee v. CSX Transp., Inc.*, 233 Ga. App. 30, 31 (503 SE2d 309) (1998).

Although the standard for proving causation is relaxed in a FELA case, it does not necessarily follow that the standard for evaluating the admissibility of expert testimony under OCGA § 24-7-702 is similarly relaxed. This question appears to be one of first impression in Georgia, but federal courts have held that the trial court's "application of Rule 702 and Daubert . . . is not altered in any way by the substantive law governing Plaintiff's claims. While this is a FELA case, to which a relaxed standard of causation applies, the standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another." (Citation, footnote, and punctuation

5

omitted.) *Bowers v. Norfolk Southern Corp.*, 537 FSupp.2d 1343, 1352 (M.D. Ga. 2007), aff'd *Bowers v. Norfolk Southern Corp.*, 300 Fed. App'x 700 (11th Cir. 2008). "Thus, the fact that FELA employs a relaxed standard of causation does not mean that in FELA cases courts must allow expert testimony that in other contexts would be inadmissible." Id. ("admission of expert testimony is controlled – even in FELA cases – by the Federal Rules of Evidence and Daubert"). See also *Claar v. Burlington Northern R. Co.*, 29 F3d 499, 503 (9th Cir. 1994) ("Nor does it mean that in FELA cases courts must allow expert testimony that in other contexts would be inadmissible."). We find these cases to be persuasive[5] and likewise hold that FELA does not alter the standards for the admission of expert witness testimony under OCGA § 24-7-702.

b. We now turn to Smith's assertion that the trial court erred in treating this "routine orthopedic case" as a "toxic exposure case" in excluding Dr. Wardell's testimony under OCGA § 24-7-702. Again, we disagree. OCGA § 24-7-702 provides:

---

[5] OCGA § 24-7-702 is based upon Federal Rule of Evidence 702, and we look to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993) and its progeny in construing this statute. See *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015).

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

The proffering party bears the burden of presenting evidence of reliability in order to meet the standards of OCGA § 24-7-702 (b). See *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 646 (2) (697 SE2d 770) (2010).

"Though Daubert involved scientific experts, the Supreme Court has since made it clear that the strictures of Rule 702 and Daubert apply with equal force to non-scientific expert witnesses." (Citation omitted.) *Bowers*, 537 FSupp.2d at 1350. Thus, a medical doctor's opinions regarding injury causation "clearly fall within Federal Rule of Evidence 702's scope of 'scientific knowledge' and must satisfy Daubert." *Wilson v. Taser Intl., Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008). "Importantly, any step that renders the analysis unreliable renders the expert's testimony inadmissible." *Bowers*, 537 FSupp.2d at 1350. The trial court has broad

discretion in deciding how to assess the reliability of expert testimony. See *Hamilton-King*, 287 Ga. at 642-43 (1); *United State v. Frazier*, 387 F3d 1244, 1264 (11th Cir. 2004). This discretion affords the trial court "considerable leeway . . . in deciding which tests or factors to use to assess the reliability of an expert's methodology." *Bowers*, 537 FSupp.2d at 1351.

Here, the trial court considered three factors in assessing the reliability of Dr. Wardell's opinions: whether his conclusions were based upon sufficient facts or data, whether he reached those conclusions by use of reliable principles and methods, and whether he applied those principles and methods reliably to the facts of the case. See OCGA § 24-7-702 (b). The trial court first found that Dr. Wardell's use of a "differential etiology"[6] to opine on the cause of Smith's injuries is a legally sufficient methodology. The court then turned to the facts and data Dr. Wardell relied upon and how he applied his methodology to the facts of this case.

At deposition, Dr. Wardell testified that he is not Smith's treating physician and that he saw Smith one time for approximately one hour. And although Dr.

---

[6] "In a differential etiology, the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." (Citation and punctuation omitted.) *Brown v. Burlington Northern Santa Fe R. Co.*, 765 F3d 765, 769 (7th Cir. 2014).

8

Wardell agreed that knowledge of the work Smith performed for CSX is important, his only understanding of Smith's work history is what Smith was able to recount for him. Dr. Wardell also agreed that his opinions depend on the reliability of Smith's report. In a handwritten memorandum prepared for Dr. Wardell, Smith recounted a "list of activities" that he performed, along with the "worst tools and applications." These activities included "standing on 20" wide swinging scaffold all day long, climbing bridge or ladders numerous times a day," using a "13/16 36" bit to drill into bridge timber," and "loading and unloading 40-120 lb. granite stone by hand."

With respect to the frequency or duration of any particular task, Smith's descriptions were vague. For example, when describing how he would load creosote onto the back of a work truck with lug hooks, he explained "and this happened more often than you think." Moreover, Smith admitted that he used a variety of tools, some of which required him to operate machinery standing up versus squatting down, and that they used all different muscle groups. Smith testified that he would have no way of calculating what percentage of time he was in any particular posture.[7]

---

[7] Although Smith later claimed he could calculate the hours he worked with each tool for each week of his career, there is nothing in the record to indicate that he did so or provided such information to Dr. Wardell.

Dr. Wardell confirmed that Smith did not specify the frequency with which he performed his various duties and that he was unable to quantitate the level of repetitive stress Smith experienced in his various job duties or whether Smith performed any particular task in excess. Nonetheless, Dr. Wardell did not attempt to bridge this factual gap by watching anyone perform any of the duties Smith complained of or traveling to a railroad yard to take any measurements relevant to repetitive stress injuries. Dr. Wardell did not review any studies regarding ergonomics relevant to Smith's particular job duties, nor is he aware of any literature connecting acromioclavicular arthritis to railroad work. Instead, Dr. Wardell relied upon sports medicine literature linking heavy weight lifting to acromioclavicular arthritis.

After examining these facts, the trial court determined that Dr. Wardell's testimony is "surprisingly unsubstantiated and superficial – Dr. Wardell simply concludes that because a weight lifter or body builder gets the same injury from overhead lifting then the Plaintiff must also have exacerbated his condition from work-related overhead lifting."[8] Accordingly, the trial court found Dr. Wardell's

[8] The trial court specifically noted the lack of any further scientific or technical evidence, such as an explanation for the reason Smith's type of injury might occur in the context of his work duties; the amount and type of activities he performed that might cause this type of injury; and whether Smith actually engaged in this amount and type of activity.

opinions lacked the necessary reliability and thus must be excluded at trial. Based on the record before us, we find that the trial court did not abuse its discretion in excluding Dr. Wardell's testimony.

"[A]n expert must do more than just state that she is applying a respected methodology; she must follow through with it. In deciding whether an expert employed a reliable method, the [trial] court has discretion to consider whether the expert has adequately accounted for obvious alternative explanations." (Citations and punctuation omitted.) *Brown v. Burlington Northern Santa Fe R. Co.*, 765 F3d 765, 773 (7th Cir. 2014) (although FELA plaintiff need only prove employer's negligence was *a* cause (and not the *sole* cause) of his injury, without performing an investigation, plaintiff's expert could not rule out other activities as the sole cause of plaintiff's condition). Furthermore, we have previously cautioned against confusing general causation with specific causation - here, whether certain work duties *can* cause acromioclavicular arthritis versus whether Smith's work duties actually caused

or exacerbated his acromioclavicular arthritis.[9] See *Shiver v. Ga. & Fla. Railnet, Inc.*, 287 Ga. App. 828, 830 (1) (652 SE2d 819) (2007).

In this case, Smith's medical history, along with his claim that an unknown combination of various work duties caused his degenerative injuries, present an unusually complex specific causation issue. The record shows that Smith's medical history is complicated by diagnoses of chronic obstructive pulmonary disorder, hypertension, diabetes, obesity, and rheumatoid arthritis. Medical records also indicate that Smith may suffer from fibromyalgia – as evidenced by his "chronic widespread pain, fatigue, and insomnia" – and that he is a life-long smoker. In addition, Smith has a family history of osteoarthritis, rheumatoid arthritis, and fibromyalgia. The complexity of these factors "underscores the need for Dr. [Wardell] to have done more than simply adopt [Smith]'s history as his causation opinion and opine, without scientific support," that Smith's work history caused his injury. *Wilson*, 303 F. App'x at 714 (medical degree does not authorize doctor to testify when he does not base his methods on valid science). In fact, Dr. Wardell agreed that

---

[9] To maintain a claim for aggravation of a pre-existing injury, a FELA plaintiff "must show (1) that the employer was negligent during the applicable time period; (2) that that negligence aggravated the pre-existing injury; and (3) the degree to which it aggravated the injury." *Phelps v. CSX Transp., Inc.*, 280 Ga. App. 330, 335 (634 SE2d 112) (2006).

osteoarthritis is the most common type of arthritis and that there is a high correlation with aging, with virtually everyone experiencing some degree of osteoarthritis by age 40, and that smoking, obesity, and hereditary influences also affect the development of osteoarthritis.

Again, we find federal courts addressing similar issues to be persuasive. The Seventh Circuit has found that a FELA plaintiff's expert witness failed to utilize a reliable methodology where he "entirely failed to personally observe [plaintiff's] working conditions, obtain a written work description, or perform scientific tests. He also failed to investigate several possible causes of [plaintiff's] health problems." *Brown*, 765 F3d at 773. In addition, the court also found fault with the expert's lack of knowledge of the duration or frequency of the plaintiff's exposure to the alleged condition at work, concluding that "[c]omparing two unknown, potentially wide-ranging variables is not a scientific exercise." Id. at 774 (observing plaintiff's actual working conditions is important to avoid "ruling in" risk factors that were not actually present at his job).

We also take special note that another federal court has previously found Dr. Wardell's testimony unreliable in a FELA case for similar reasons. *Bowers*, 537 FSupp.2d at 1354-59. The *Bowers* court first explained that Dr. Wardell had failed

13

to demonstrate that his causation opinions were testable, had failed to offer any error rate for his opinions, had not shown evidence that his opinions have been peer reviewed or that he used a peer-reviewed source to reach his opinions, and had failed to show the general acceptance of his opinions. Id. at 1353-54. Turning to the five additional factors trial courts are permitted to use for testing expert opinions set forth in the advisory committee notes under Rule 702, the court found that Dr. Wardell was not testifying about matters growing naturally and directly out of research he conducted independent of litigation, but rather that he had developed his opinions expressly for purposes of litigation.[10] Id. at 1354 (noting that plaintiff's counsel sent him from his home in Savannah to Suffolk, Virginia to see Dr. Wardell, not for treatment, but to build his case for litigation). As in this case, the *Bowers* court concluded that Dr. Wardell had "unjustifiably extrapolated from an accepted premise to an unfounded conclusion." Id. at 1355 ("Absent from this vague premise is any specific information about the amount of [movement] that is harmful to an individual, the length of time over which such harm normally occurs, and the nature of the

---

[10] The court also noted that, although Dr. Wardell is a board-certified orthopedist, his interest is in sports medicine. *Bowers*, 537 FSupp.2d at 1354.

14

resulting harm.").[11] "Expert testimony lacks 'fit' when a large analytical leap must be made between the facts and the opinion." (Punctuation omitted.) Id. at 1351 (citing *GE v. Joiner*, 522 U.S. 136, 147 (118 SCt 512, 139 LE2d) (1997)).

These fatal flaws are likewise present in this case. "[W]here evidence almost exists, a judge may be tempted to surrender his or her duty to a jury. This is exactly what should not happen." *Tootle v. CSX Transp., Inc.*, 746 FSupp.2d 1333, 1340 (S.D. Ga. 2010). Accordingly, the trial court did not abuse its discretion in excluding Dr. Wardell's testimony. See *Bowers*, 537 FSupp.2d at 1361 ("[O]pinions based on a differential diagnosis are admissible only if the trial court determines that the expert reliably applied the differential diagnosis method."); *Moore v. Cottrell, Inc.*, 334 Ga. App. 791, 794 (1) (780 SE2d 442) (2015) (trial court did not abuse its discretion in excluding expert's testimony where, inter alia, he did not inspect workplace machinery at issue and it was unclear what analysis he applied).[12]

---

[11] As in this case, the district court found that "it appears from the record that Dr. Wardell simply took Plaintiff's word for what happened and adopted that explanation as his own opinion on causation." *Bowers*, 537 FSupp.2d at 1357.

[12] Smith also appears to separately enumerate as error an assertion that under FELA, CSX's liability extends to aggravation of pre-existing arthritic conditions. While this is true, Dr. Wardell's opinions on causation are similarly flawed as described in this Division. See *Phelps v. CSX Transp., Inc.*, 280 Ga. App. 330, 334 (634 SE2d 112) (2006) (under FELA, employer has duty to provide its employees

15

2. In his second enumeration of error, Smith asserts that the trial court erred in granting summary judgment to CSX. He first argues that CSX is not entitled to summary judgment because he provided admissible expert testimony regarding causation.[13] However, for the reasons stated in Division 1, this argument fails. Smith next asserts that his lay testimony was sufficient to prove causation and avoid summary judgment. This argument is without merit.[14]

To avoid summary judgment, the plaintiff "must establish, with *competent* evidence" each element of his FELA claim. (Emphasis supplied.) *Zeagler*, 293 Ga. at 596 (2). As one federal court has explained, "[t]he relaxed causation standard is

---

reasonably safe work conditions, which duty extends to providing a workplace that does not aggravate a pre-existing injury).

[13] Within this enumeration of error, Smith also expounds on the reasons he believes the trial court erred in excluding Dr. Wardell's testimony. We are not persuaded, however, that any of these augmented arguments show that the trial court abused its discretion. See *HNTB Ga., Inc.,* 287 Ga. at 642 (1). Regardless of Dr. Wardell's qualifications or selected methodology, he simply did not possess sufficient factual knowledge of Smith's various work duties, including the intensity, frequency, or duration of those duties, nor did he reach his conclusions by use of reliable principles and methods. See *McCann v. Illinois Central R.*, 711 FSupp.2d. 861, 870-71 (C.D. Ill. 2010) (excluding causation expert in cumulative trauma case where he had little knowledge regarding actual risk factors FELA plaintiff was exposed to).

[14] We further note that at the hearing on CSX's motion for summary judgment, Smith's counsel conceded that without Dr. Wardell's testimony, Smith was unable to prove specific causation.

16

simple enough to meet in cases involving readily understood injuries, e.g., those that result from being hit by a train. But when there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation." (Citation and punctuation omitted.) *Brown*, 765 F3d at 771. And, "[i]n particular, for most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation." Id. See also *Brooks v. Union Pacific R. Co.*, 620 F3d 896, 899 (8th Cir. 2010) (in FELA cases, expert evidence required to establish causal connection unless injury had an obvious origin, such as a broken leg from being struck by an automobile).

Thus, where the cause of the injury – in this case, the onset of acromioclavicular arthritis – is not obvious and the plaintiff has no admissible medical expert testimony to support his claim that his employer caused his injury, the employer is entitled to summary judgment. See *Shiver*, 287 Ga. App. at 831 (1). Accordingly, because Smith is unable to present admissible expert testimony to prove that his injuries were caused by CSX, the trial court did not err in granting summary judgment to CSX.

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur.*