**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 19, 2025**

# In the Court of Appeals of Georgia

A25A1180. NORFOLK SOUTHERN RAILWAY COMPANY v. EVANS.

MERCIER, Judge.

Following the trial court's denial of its motion for summary judgment in this case premised upon the Federal Employers' Liability Act ("FELA"),[1] Norfolk Southern Railway Company appeals, contending that the action brought by Donald Evans, its employee, fails as a matter of law because: (1) Evans presented no expert medical evidence establishing the specific cause of his injuries and (2) the action is barred by the applicable three-year statute of limitation, 45 U.S.C. § 56 ("[n]o action

---

[1] FELA is a federal statute giving railroad employees the right to sue their employer in state or federal court "for . . . injury or death resulting in whole or in part from [the railroad company's] negligence[.]" 45 U.S.C. § 51.

shall be maintained under this chapter unless commenced within three years from the

day the cause of action accrued."). For the reasons set forth below, we reverse.

It is settled that

[s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Thurman v. TCFPA Family Med. Centers*, 358 Ga. App. 439, 439 (855 SE2d 431)

(2021) (citation and punctuation omitted).

Viewed in this light, the record reveals that, on July 15, 1996, Evans began

working for Norfolk Southern as a member of its Maintenance of Way Department,

which maintains the railroad tracks. Within this department, Evans was a plate jack

operator, a position that he held from 1996 to 2006. To perform this job, Evans walked

as much as two miles per day on the crossties and over uneven ground, and he used

a plate jack machine to push plates under the rail. From 2006 to 2018, Evans worked

as a tie crane operator, a position which required minimal walking; instead, Evans sat

on and rode a machine to perform his duties. Evans deposed that his tie crane machine

was broken and without lumbar support. He also stated that the tie crane machines

provided by Norfolk Southern were outdated, had uncomfortable seats, had a right foot pedal that was hard to depress, and were generally jarring to the operator's body when used to pick up ties. In 2018 and 2019, Evans held the positions of spike puller, a machine operator job, , and anchor squeezer. From 2020-2023, he acted as a spike puller, and he now continues to be employed by Norfolk Southern in the position of tie crane operator.

With regard to his alleged injuries, the record reveals that Evans first reported back pain and spasms, which he felt could have been associated with playing basketball or work activities, to a physician in 2010. In 2012, Evans again complained of back issues, which he considered to be related to "travel, work[,] and . . . getting in the car and driving" long distances to report for work. In 2014, Evans underwent a physical, and he stated that he had pre-existing lower back pain and back spasms, which he again attributed to his work and related travel. In 2018, Evans began feeling sore and stiff, which he associated with "sitting at a machine, . . . bouncing around all day and being on it for so long[.]"

In November 2018, after an extended work trip, Evans sought treatment for right hip pain at OrthoGeorgia Urgent Care. In the process of doing so, he explained

to the treating physician's assistant that, at work, he had to constantly move his right hip to depress a pedal with his right foot on the machine he was using. Evans received an x-ray and a steroid shot in his hip, and he was scheduled for a subsequent appointment with Dr. Dennis K. Jorgensen, an orthopedic surgeon, who Evans consulted with for the first time on December 31, 2018.

Dr. Jorgensen reviewed Evans's x-rays, which showed "severe degenerative changes of his hip" and "[s]evere right hip osteoarthritis." In addition, Evans "had subchondral cysts up in his pelvis" and "had lost a lot of cartilage." At the time of this consultation, Evans indicated to Dr. Jorgensen that "he was working on the railroad and was able to kind of handle it and keep working, and so he didn't want to do much about" his condition. As time passed, Evans's symptoms progressively worsened. In 2019 and early 2020, Evans discussed his symptoms with Dr. Hutchings, his primary care doctor, and he noted that his pain was exacerbated by work tasks like "swinging the hammer" and "using the claw bar." By December 2021, pain in Evans's hip became constant, and, in 2022, Dr. Jorgensen suggested a total hip replacement, a procedure that Evans eventually underwent.

On July 8, 2022, Evans filed a FELA-based complaint against Norfolk Southern, alleging that Norfolk Southern failed to furnish a reasonably safe place to work; reasonably safe equipment; adequate manpower or personnel; and necessary and proper equipment. Evans further alleged that Norfolk Southern assigned him duties that it should have known would result in injury, that were beyond his physical capacity, and that would create new injuries or exacerbate prior injuries. Evans claimed that these "unsafe work conditions" led to "gradual and ongoing injuries" to his hip, shoulders, and knees.

In response, Norfolk Southern moved for summary judgment, asserting two grounds. First, Norfolk Southern maintained that Evans failed to produce sufficient testimony from a medical doctor/expert to show that his allegedly unsafe work responsibilities and conditions were the specific cause of any of his injuries. As a second ground for summary judgment, Norfolk Southern argued that Evans's claim was barred by FELA's three-year statute of limitation. Following a hearing, the trial court denied summary judgment, noting FELA's "relaxed causation standard[.]" The trial court did not, however, address the statute of limitation argument. Thereafter,

we granted Norfolk Southern's application for interlocutory review, and the present appeal ensued.

1. Norfolk Southern contends that the trial court erred by denying its motion for summary judgment because Evans failed to prove specific causation, one of the required elements of an actionable FELA claim. More specifically, Norfolk Southern contends that Evans failed to provide expert *medical* testimony that his injuries were caused by the performance of his work duties. We agree.

In order to maintain a viable claim under FELA,

> the plaintiff must prove each of the traditional common law elements of negligence: duty, breach, foreseeability, and causation. Under FELA, however, the causation standard is relaxed, and the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. Nevertheless, some evidence of causation is required; FELA is not a no-fault workers' compensation statute. And, in all FELA lawsuits, the plaintiff bears the burden of proving *medical* causation.

*Smith v. CSX Transp.*, 343 Ga. App. 508, 510 (1) (a) (806 SE2d 890) (2017) (citations and punctuation omitted; emphasis supplied).

Here, Evans presented Dr. Jorgenson as his sole medical expert. When asked to give an opinion about whether Evans's work on the railroad caused his injuries, Dr. Jorgensen responded:

> My opinion is it would be hard to associate his work on the railroad as a contributing factor to his arthritis – no more than, you know, him playing basketball or, you know, him doing a lot of yardwork or . . . I mean, that's been my experience, is I do total hip replacements on so many people from different walks that it would be hard for me to say, why aren't I seeing a heck of a lot more railroad workers for total hips than I do?

Dr. Jorgensen further explained:

> I can't make a sweeping thing saying that if you do activity X, that's going to result in you having a total hip replacement during your lifetime. That's not what I see in my practice. In fact, I see a lot of people that I have no reason to think that they should have arthritic change because they have parents that lived into their 90s and never had a hip replacement, they weigh 100 pounds soaking wet, and they're not really that active, and they have a severe joint. So it's hard—I mean, I'm being honest. It's hard to—to—for me to, with a medical degree of certainty, say that if people work in Environment A versus B versus C, they have a higher likelihood or contributing factor to arthritic changes. *I just don't see that in my practice.* (Emphasis supplied.)

Ultimately, Dr. Jorgensen reached *no medical conclusion at all* regarding the cause of Evans's injuries, expressly deposing that he had no opinion within a reasonable degree of medical certainty as to what caused the onset of Evans's osteoarthritis.[2]

In an attempt to buttress this testimony, Evans also offered the *non-medical* opinion of Dr. Tyler Kress, an engineer with a Ph.D. in biomedical engineering. Dr. Kress opined that Evans's job exposed him to vibration, required that he perform heavy manual labor while working on uneven surfaces, and placed stress on his hips

---

[2] To the extent that Dr. Jorgensen reached any conclusion, it was that *everything* in life that causes stress to the hip might have some affect on joint health. He explained:

> [P]eople [who] are more active than sedentary, you would think, just common sense, are putting additional stressors to their joint, or if they're heavier versus lighter, they're putting more additional forces to the joint. Having said that, you know, I see so many hips where if I'm going follow that principle, it shouldn't play out that I'm doing hip replacements on people who are largely sedentary, they're thin, and they have horrible hips as well. But I think . . . Mr. Evans had a bad hip when we first saw him in 2018. I think it progressed. I see that as a natural course of arthritic change, *just lifestyle in general.* And I don't honestly know that if, you know, he would have been working elsewhere or less active through his hip – could he have prolonged this? *I don't know.* (Emphasis supplied.)

As discussed above, Dr. Jorgensen thereafter expressly deposed that *he had no opinion* as to the cause of Evans's osteoarthritis.

and shoulders. Dr. Kress concluded: "The vibrational environment is recognized as a biomechanical/ergonomic risk factor that can lead to whole body vibrational health problems such as development of hip wear-and-tear and problems."

Even in the aggregate, however, these expert opinions contain no *medical* determination that Evans's work duties actually caused his injuries. "[T]he relaxed causation standard [under FELA] is simple enough to meet in cases involving readily understood injuries, e.g., those that result from being hit by a train. But when there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation." *Smith*, 343 Ga. App. at 516 (2) (citation and punctuation omitted). "[W]here the cause . . . is not obvious and the plaintiff has no admissible *medical* expert testimony to support his claim that his employer caused his injury, the employer is entitled to summary judgment." Id. at 517 (2) (emphasis supplied).

Here, Evans has provided no medical expert testimony establishing the cause of his injuries, as his sole medical expert expressly stated that he had no opinion regarding the cause of Evans's osteoarthritis. As a result, Evans's FELA claim fails

as a matter of law, and the trial court erred by denying Norfolk Southern's motion for summary judgment. *Smith*, 343 Ga. App. at 516 (2).

Evans's misplaced argument that Dr. Kress's testimony should be considered to show specific causation does not alter this result.

> [B]iomechanical engineers typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate [but] ordinarily are not permitted to give opinions about the "precise cause of a specific injury." This is because biomechanical engineers lack the medical training necessary to identify the different tolerance levels and pre-existing medical conditions of individuals, both of which could have an effect on what injuries resulted from an accident. [Although a biomechanical engineer] is qualified to render an opinion in this case as to general causation, [he is not qualified to do so] as to specific causation.

*Bowers v. Norfolk Southern Corp.*, 537 FSupp2d 1343, 1377 (B) (2) (M. D. Ga. 2007).

2. Given our holding in the preceding division, we do not reach Norfolk Southern's alternative contention that Evans's claim was barred by FELA's statute of limitation. Based on the facts of this matter, however, we note concern that, in denying Norfolk Southern's motion for summary judgment, the trial court chose not to address this issue. See *Earls v. Aneke*, 350 Ga. App. 455, 460 (1) (829 SE2d 661)

(2019) (as a court for the correction of errors of law, we do not consider whether the trial court was "wrong for any reason.").

*Judgment reversed. Dillard, P. J., and Senior Judge C. Andrew Fuller, concur.*