A89A1985. STONE v. DAYTON HUDSON CORPORATION.
(388 SE2d 909)

BIRDSONG, Judge.

This is an appeal from the trial court's order granting appellee/defendant's motion for summary judgment in a slip and fall case.

On July 14, 1986, after 10:00 p.m. when the B. Dalton bookstore was closed, the manager swept and applied a floor treatment mixture with a sponge mop to the parquet wood floor. This floor treatment is not classified as wax, but is a mixture of four parts of mineral spirits and one part of linseed oil. This was the first time the manager had ever personally applied this treatment; she followed the procedure recommended in the bookstore manual. The manual does not contain drying-time instructions. Past experience indicates overnight drying is generally required.

The next morning at 9:00 a.m., before the store opened, the manager and another employee checked the floors. The floor inspection took approximately ten minutes. A small wet area was found in the back of the store; no slick areas were found, but some tacky areas or spots were detected under the edges of the tables. These areas were sticky to the touch. The tables were located between the right and center aisles in front of the book racks. Before opening the store, the manager placed a sign between the two cash registers that read "Be careful, floor is wet in spots" or words to that effect. The sign was displayed as an extra precaution; it was to protect against customers stepping in wet spots "[i]n case there was something [the manager] had missed."

Between 1:00 p.m. and 2:00 p.m. that afternoon, appellant and her companion entered the bookstore. Appellant patronized the store four or five times a year. The floor was well taken care of and clean; it was not dirty and littered. Appellant entered on the right side of the store; she went to one of the tables and selected a children's book for purchase. Appellant walked to several points in the store and was coming up the right aisle looking at books when she fell. She did not catch her foot on anything, as the aisle was very clean. Appellant described her sensory perception of the fall by asking the rhetorical question "[h]ave you ever slipped on ice." She further testified that "I

was walking along and, all at once, both feet just went completely out from under me" simultaneously in a forward-type motion. Appellant has no specific explanation for why she fell, except that both feet went out from under her; she slipped. She just knows "that I hit something and my feet just flew out from under me. *I hit a slicky spot.*" (Emphasis supplied.) When appellant was on the floor, she was in pain and cannot remember if the floor felt wet or slippery. She did not get any substance or stain on her clothes during the fall, and she did not go back and feel the floor area after her fall. She did not have anything on her hand; it was not greasy or oily. She did not check the bottoms of her shoes; she was in pain and was not thinking about checking clothes and shoes. Although in pain, appellant went to the cash register to pay for her purchase. At the register, she observed for the first time the sign that said, "Careful Wet Floor" or "Floor Slippery," or words to that effect. Appellant and her companion remarked to the manager that the sign was in the wrong location. The manager told appellant and her female companion that "they waxed the floor and it hadn't dried in spots."

The manager observed appellant walking toward a table to look at a book. As appellant was walking, "[S]he was looking at a book on top of the table." When appellant fell, the manager could only see her from the hips down, and did not see appellant doing anything in a careless-looking manner. When appellant fell she was beside table two. The manager told appellant the floor had been treated the night before, but does not recall saying anything else. At some point in time after appellant left the store, the manager "walked over to [the floor] where [appellant] had been standing and . . . touch[ed] the floor with [her] hand and it was dry." *Held:*

1. " '[O]n summary judgment, the movant has the burden of showing "there is no genuine issue as to any material fact and that [movant] is entitled to a judgment as a matter of law." [Cit.] When, as in the instant case, the movant is the defendant, [it] has the . . . burden of *piercing* the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint.' [Cit.] In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. [Cits.]" (Emphasis supplied.) *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

2. "When a motion for summary judgment is made *and supported* as provided in [OCGA § 9-11-56 (e)], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [OCGA § 9-11-56], must set forth . . . facts showing that there is a genuine issue for

trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.) OCGA § 9-11-56 (e). Thus, once a movant/defendant pierces the opposing party/plaintiff's pleadings, the burden shifts to the opposing party/plaintiff who "must come forward with rebuttal evidence *at that time*, or suffer [summary] judgment against him." *Meade v. Heimanson*, 239 Ga. 177, 179-180 (236 SE2d 357). Thus, "[i]f the movant does not carry the initial burden, the opposing party is not required to produce any counter evidence." Ga. Prac. & Proc. (5th ed.), § 23-17.

Appellant/plaintiff's complaint included inter alia the following averments: plaintiff shows that defendant has applied wax to the parquet floor causing it to have a slippery surface, which defendant knew or should have known constituted a danger to its customers; plaintiff slipped on the floor and fell causing serious injuries to her person; and, plaintiff shows that all her injuries and damages are a direct result of and were approximately caused by the negligence of the defendant/appellee in failing to properly maintain the premises. The complaint placed appellee on reasonable notice that plaintiff's cause of action was based on the allegedly negligent manner in which it applied a wax or other slippery substance to the floor or in its negligent failure to properly maintain the floors, having actual or constructive knowledge of the resulting danger to customers, following the application of this substance. See generally *Alterman Foods v. Ligon*, 246 Ga. 620, 624-625 (272 SE2d 327).

The deposition testimony of appellee's store manager contained inconsistencies for which the record shows no reasonable explanation as to two pertinent matters. First, unexplained inconsistencies exist regarding whether the manager personally inspected the entire floor of the bookstore before the incident. The manager testified by responding in the affirmative to the question, "[d]o you *think* you walked on every square inch of the walkway when you did that check," and testified that she "walked all through the store and did a sight check of the floors." (Emphasis supplied.) However, she also testified that another employee helped her check the floor, and testified that she *does not recall* who checked the center aisle. (The record contains no deposition or affidavit of this employee.) Thus, an inconsistency, not reasonably explained, exists as to whether the manager did in fact walk over and spot check every square inch of the walkway.

Secondly, an inconsistency, not reasonably explained, exists as to the method used by the manager before the incident to check various parts of the floor. When initially asked how she checked the floor, the manager testified that she "did a sight check of the floors." The manager was then asked if she had checked the floors by "scuffling [her] feet," and she testified, "[n]o, I did not." Immediately thereafter the

manager was asked "I take it you . . . were doing that simultaneously?" and she testified, "yes." Subsequently, the manager was asked "[a]nd I take it you didn't check [the floor] with your hand," and she testified, "I don't recall." Immediately thereafter she was asked, "You don't know for sure, you might have checked it with your hands, too?" and she then testified, "That's possible, yes."

The "contradictory testimony rule" applies to testimony presented in support or response to a motion for summary judgment. This rule provides that "a party's self-conflicting testimony is to be construed against him. . . ." *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d 383); *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680). If a reasonable explanation is offered for the contradiction, however, the inconsistency will not be construed against the party witness. The burden rests on the party giving the contradictory testimony to tender the reasonable explanation, and whether this has been done is an issue of law. *Gentile*, supra at 583. But if no explanation is given for the conflict in testimony or "a party's explanation . . . is determined to be unreasonable, the trial court must *eliminate* the favorable portions of the contradictory testimony and then take all testimony on motion for summary judgment, ' "*as it then stands*, and construe it in favor of the party opposing the motion in determining whether a summary judgment should be granted." ' " Id. As no reasonable explanation for the inconsistencies appears in the record, this latter rule shall be applied.

The manager, however, further testified that after appellant departed the store she walked over to where appellant "had been *standing* and . . . I did *touch* the floor with my hand and it was dry." (Emphasis supplied.) The manager did not expressly testify whether she examined the floor at the location where appellant slipped and fell; did not testify that she examined the surrounding area where the slip and fall appeared to have occurred; did not testify as to how soon after appellant departed the premises that the floor where she had been standing was touched; and, previously testified she could only observe appellant from the waist up at the time the fall occurred. In *Alterman Foods*, supra at 625, the court stated, "[d]efendant introduced testimony of witnesses who had examined the floor *immediately* after plaintiff's fall and who found neither a foreign substance *nor any other defect* in the floor. Defendant also introduced evidence that the floor had been waxed two and one-half days prior to plaintiff's fall and had been trafficked during that time by other customers. Defendant's evidence was sufficient to pierce the pleadings of the plaintiff and to shift the burden to her to produce issuable evidence or suffer judgment." (Emphasis supplied.) In *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257 (1) (366 SE2d 785), citing *Food Fair v. Mock*, 129 Ga. App. 421, 422 (199 SE2d 820), we held that the

plaintiff's pleadings, averring that there was a *liquid* at the fall site, were pierced by opposing party's deposition testimony that the manager had inspected the floor where appellee had *fallen* and had found it to be *dry*. In this case, appellant/plaintiff did not aver that she had slipped in anything wet, rather she averred that a negligently maintained slippery floor surface was the direct and proximate cause of her fall and injury. Thus, the mere fact that the floor might be dry, unlike the situation in *Winn-Dixie*, supra, would not per se pierce the pleadings, as the floor could be dry and yet be slippery or "slicky." In *Food Fair*, supra at 422, the court found the pleadings had been pierced by affidavits showing that "*as [the customer] was lying on the floor* and after she was removed, each affiant 'carefully examined the floor . . . in the immediate surrounding *area* adjacent thereto' and that in said area there was no defect in the . . . (floor) or trash, spilled liquids, sand, grit, leafy vegetables *or any foreign matter whatsoever*. There were no counter-affidavits or other evidence submitted in opposition to the motion for summary judgment." (Emphasis supplied.) Id. In the instant case, there is no such direct evidence either of a reasonably prompt or of a reasonably thorough inspection of the fall area.

In view of the posture of the record, particularly in light of the proper application of the "contradictory testimony rule" of *Gentile*, supra, the absence of any evidence as to the time the floor was checked after appellant departed the premises, the lack of direct evidence that the area where she slipped and fell was examined, the lack of evidence that the floor that was examined was not slippery or slick as averred, and the summary judgment rules that *inferences* are to be drawn against the movant and in favor of the opposing party, we find that appellee did not pierce the pleadings. Accordingly, the burden was not shifted to appellant to present any "issuable evidence." See *Alterman Foods*, supra at 625.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 30, 1989.

*Reynolds & McArthur, Charles M. Cork III*, for appellant.
*Hart & Sullivan, Elaine W. Whitehurst, Stephen P. Riexinger*, for appellee.