**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2022**

# In the Court of Appeals of Georgia

A22A0528. HART v. PHUNG et al.

BROWN, Judge.

In this personal injury case, Ashley Hart appeals from the trial court's grant of summary judgment to Thanh Tan Phung, Uber Technologies (GA), Inc., and Rasier, LLC (collectively "the defendants"). She contends that the trial court erred in excluding the testimony of her expert and in granting summary judgment. For the reasons explained below, we affirm one aspect of the trial court's ruling with regard to the expert opinion testimony and reverse others. We also reverse the grant of summary judgment to the defendants.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and

the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

(Citation and punctuation omitted.) *Chybicki v. Coffee Regional Med. Center*, 361 Ga. App. 654, 655 (865 SE2d 259) (2021). So viewed, the record shows that Hart was struck by a car driven by Phung while crossing a four-lane highway separated by a grass median. She was not in or near a pedestrian crosswalk. At the time of the accident, which was shortly after 2:00 a.m., Phung, an Uber driver, was on his way to pick up a fare.

Before the accident, Hart and several friends were at a bar, where Hart drank several drinks and became intoxicated. A female friend who was with her that evening deposed that she told Hart to get an Uber if she did not want to accept a ride home. Hart instructed her friend to leave, stating that she had called an Uber. When her friend returned from the restroom, Hart and the male companion she had met that evening were gone, so the friend thought "they had already gotten the Uber and they had left." She testified that it was out of character for Hart to leave a bar with a man

2

she had just met and that she thought that "alcohol played a role in her trusting this guy." She explained that the man with whom Hart had left lived in a nearby apartment across the highway from the bar where they had been drinking, and she heard him offer for Hart to walk to his apartment with him. While she described Hart as "intoxicated," Hart "was still able to walk, talk, and function." Hart's male companion was also intoxicated.

While Hart deposed that her companion's name that evening was Troy Phillips,[1] she remembered little else from the evening of the accident, including where she was going when she was struck by Phung's vehicle or how the accident occurred. She was wearing her work uniform, which consisted of a black shirt and blue jean shorts. She suffered a brain injury requiring a cranioplasty to allow room for her brain to swell, as well as a broken pelvic bone and compound fracture of her left tibia. Following the accident, she suffers from frequent seizures and cannot work.

Phung testified that he could not provide any information about his destination at the time of the accident; no data exists on the Uber app because the trip "did not

---

[1] She testified that she has had no communication with him since the accident, and the record does not include an affidavit from or deposition of him. Although the record contains a subpoena for the deposition of Troy Phillips, we cannot determine from the record whether this deposition took place.

occur." He described the area where the accident occurred as "commercial" with "some . . . light[ ]" emanating from a bank on the other side of the divided highway from where he struck Hart. The posted speed limit was 45 mph and he was "definitely" driving below that limit at about 40 mph. He described the accident as follows:

> I was going in the right lane [when] I suddenly noticed someone waving right in my lane. And I merge into the left lane and just normal reaction on what you see in front of you. And I heard some noise, but . . . I definitely did not see anyone else at the time. So from the noise, I realized that it looks like I might have hit something. So I pulled over to the right side as soon as I could.

He testified that his lane change was "a pretty smooth motion" rather than a "jerk motion." He did not remember "hitting the brake," explaining that he had "no reason to" do so. He stated that he was in the right lane when he saw a man in the middle of the right lane frantically waving. He acknowledged that he could have remained in the right lane and stopped in time to avoid hitting the man.

He testified that Hart "was definitely not standing or walking. That, I'm 100 percent sure. Because I know that I saw the guy in front of me. And I definitely would have seen her if she was standing or walking or making any motion." He believes that

Hart "was lying [in] the left lane" when she was struck. While he repeatedly stated that he only saw the man, at one point in his deposition, he stated, "I was in the right lane when I saw *them*." (Emphasis supplied.)

According to Phung, Hart was lying unconscious on her back "a little bit slanted with her head toward the middle median" after the impact. The narrative of the police report for the incident states:

> Vehicle #1 was traveling west on Ga 92 just east of Trickum Road in the left lane. Pedestrian #1 was attempting to improperly cross the westbound traffic lanes. Pedestrian #1 ran into the path of vehicle #1. Vehicle #1 struck pedestrian #1 in the left westbound lane with the undercarriage of vehicle #1. Pedestrian #1 came to rest in the left traffic lane at the area of impact. Vehicle #1 came to rest in the right turning lane approximately 119.0 feet from the area of impact. Pedestrian #2 stated that he had just crossed the westbound lanes and was standing in the grass median of Ga 92. The driver of vehicle #1 stated that he saw a man standing in the median waving his arms but he never saw anyone else. The driver of vehicle #1 stated that he heard a thump and pulled over to see what he hit. Pedestrian #1 was wearing a black shirt and blue jean shorts which would make her almost impossible to see in the dark unlit roadway. The driver of vehicle #1's attention was drawn to the man standing in the median waving his arms. The area of impact was in the westbound traffic lane and was determined by pedestrian #1's shoe, cell phone, keys and blood in the roadway.

Phung deposed that the police report is incorrect because it states that the man was in the median rather than the right lane when he was waving his arms.

Hart filed suit against the defendants, and after some discovery was completed, the defendants moved for summary judgment in their favor, asserting that there was no evidence that Phung was negligent and that Hart assumed the risk of her injury and failed to exercise ordinary care for her own safety. In support of their motion, the defendants relied upon the depositions of Phung, Hart, the female friend who was at the bar with Hart, the police report, and an affidavit from the state trooper who completed the report.

The trooper stated in his affidavit that the police report attached to his affidavit "accurately reflects [his] investigation of the accident scene." Other than stating that he worked for the Georgia State Patrol on the date of the accident, the trooper recounted no qualifications, training, or expertise to render expert opinions. The trooper's affidavit includes the following fact observations by the trooper: the accident occurred in a dark, unlit area of the highway; there were no street lights or crosswalks in the area; Hart improperly crossed the highway without a crosswalk; Hart was wearing a black shirt and blue jean shorts; and he "did not find any contributing factors on Mr. Phung." It also included the following opinions or

6

conclusions: "Hart ran or entered into the path of Mr. Phung's vehicle, causing the accident"; Hart's dark clothing "[made] it impossible to see her in the dark, unlit roadway"; and "I do not believe [Phung] caused, in any way, this accident."

Hart opposed the motion for summary judgment, in part, by submitting an expert affidavit from Scott B. Smith, who specializes in collision reconstruction and served on the Georgia State Patrol Specialized Collision Reconstruction Team for 18 years, with 13 of those years in the fatality unit. Smith, who was retained after the summary judgment motion was filed "to conduct a reconstruction and analyze the collision," opined the following in his affidavit with regard to the accident at issue:

> While the roadway itself is not well lit there is adequate ambient light coming from the multitude of commercial properties including a Publix shopping center and a Walmart shopping center and three banking facilities in the general area to provide some lighting to the roadway itself. Furthermore, while the victim [was] in fact wearing a dark top, she is a female with white legs, light colored shorts and reflectors on the white shoes that would have and are designed to give notice to the presence of a person. The Defendant himself in his depositions testified that he could have avoided hitting the first pedestrian by just stopping. Instead, he swerved lanes and subsequently struck the victim. . . . [I]t is my opinion that had the Defendant been more aware and more observant he could have and should have seen the second pedestrian and been able to stop his vehicle in time to avoid striking the victim.

Smith averred that his opinion was based upon his review of photographs of the scene, "body cam video from the collision[,]" the incident report, his examination of the scene and the roadway, and Phung's deposition.

The defendants took the deposition of Smith, after which they moved to exclude his testimony on the grounds that his opinions are "unreliable, unfounded, and unhelpful to a jury," and he is "unqualified to opine about Mr. Phung's physiological ability to perceive and react to a roadway hazard because he is not a human factors expert." In his deposition, Smith testified that his "field" is to reconstruct an event when two objects collide and that he received training in this field through the Georgia Public Safety Training Center. He also became certified to teach at the Training Center after completing a four-week course. He acknowledged that he has no formal training in biomechanics, engineering, physiology, or ergonomics. He does not consider himself to be an expert in "roadway lighting schemes" and has never read the "Federal Highway Administration's Lighting Handbook" or the "American Association of State Highway Transportation Officials Guide to Roadway Lighting and Design." Similarly, he does not consider himself "an expert in the field of human factors."

8

With regard to the accident at issue in this case, he did not form an opinion until he went to the scene in January of 2020. His "real interest" in going to the scene

> was how much lighting was available in the area once it got dark. Daylight, I just wanted to observe the scene and see how the layout was. I'm pretty familiar with the area. I've been out there many times, but I've been through the[re] personally when it was dark, but just wanted to make sure my recollection was right.

He acknowledged that he did not "measure the illuminance of the ambient light environment" in the area or use an illuminance meter. He did not know if the businesses he observed in January 2020 were there when the accident occurred in May 2016. He was not familiar with any method of measuring how certain materials reflect back light.

With regard to his opinions in this case, Smith testified that based on Phung's speed, he had the time and distance to be able to stop and avoid striking Hart. He opined that Phung "was within 200 feet of the point of impact for roughly three-and-a-half seconds" and the accepted time frame for a person to react is 1.5 seconds. He would travel 58 feet per second at 40 mph and could stop in 80 feet in an "emergency braking situation." He agreed that "the fundamental component" of his opinion was that Phung "had the opportunity to see [Hart]." He explained that based on Phung's

"speed, [Hart]'s appearance, . . . the lights he had on the front of his vehicle, he should have been able to see her and stop safely." He agreed that he did not know the direction Hart was facing at the time of the accident, how fast she was walking, or whether she was standing, crouched, or prone.

According to Smith, the standard for manufacturers is that "[l]ow beam headlight settings allow the driver to see approximately 200 feet in front of the vehicle." He agreed that various factors could affect the amount of light cast by headlights, such as the age of the bulbs and the cleanliness of the headlight housing.

With regard to Hart's visibility, Smith pointed out that she "was visible" because she was "light-skinned," her shirt and shorts were a different color, and a photograph showed that her white shoes had reflectors on them. He admitted that he had not examined the clothes and shoes worn by Hart at the time of the accident.

Following a hearing, the trial court issued a detailed nine-page order granting the motion to exclude Smith as an expert based on its conclusion that

> Smith's opinions on the issue of visibility are clearly outside the realm of his expertise. Smith's opinion on [Hart]'s visibility to . . . Phung is based upon the same factors a jury would use to determine whether [Hart] was visible. There was no expertise, no scientific study, no scientific method involved in reaching the conclusions reached by Smith, thus, these opinions are merely speculative. Therefore, the Court

finds that the opinions of . . . Smith[ ] are not admissible because they fail to satisfy the *Daubert* standard of admission of expert testimony and are unreliable, unfounded and unhelpful to the jury.

Two days later, the trial court granted summary judgment in favor of the defendants based upon its conclusion that Hart had failed to show that "Phung was negligent or failed to exercise due diligence."

1. Hart contends that the trial court erred by excluding the testimony of Smith as he fulfilled the requirements of OCGA § 24-7-702. Subsection (b) of this Code section provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

"This standard is based upon Federal Rule of Evidence 702, and it requires a trial court to sit as a gatekeeper and assess the reliability of proposed expert testimony, applying the principles identified in *Daubert v. Merrell Dow Pharmaceuticals*, 509

11

U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and its progeny." (Citations and punctuation omitted.) *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015). "The proffering party bears the burden of presenting evidence of reliability in order to meet the standards of OCGA § 24-7-702 (b)." *Smith v. CSX Transp.*, 343 Ga. App. 508, 511 (1) (b) (806 SE2d 890) (2017). "[T]he determination of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) Id. at 510 (1).

Having reviewed the deposition testimony of Smith and his affidavit, we cannot conclude that the trial court abused its discretion by precluding Scott from providing expert opinion regarding the illumination of Hart at the time of the accident based upon her clothing and ambient lighting in the area. See *Jones v. Beelman Truck Co.*, No. 4:13-CV-252 CAS, 2015 U. S. Dist. LEXIS 74246 at *15 (III) (B) (3) (E.D. Mo. June 9, 2015) (excluding accident reconstruction expert's opinion regarding illumination of pedestrian at time of accident where expert did not conduct any test to measure the amount of ambient lighting at the scene). However, as the trial court recognized, "Smith is qualified as an expert on the subject of accident reconstruction." Accordingly, to the extent the trial court's order could be interpreted

12

as precluding Smith from providing opinions within the field of his expertise, its blanket order precluding him from testifying is reversed. For example, Scott's testimony about the amount of feet traveled per second at 40 mph would be within the area of his expertise, as well as the manufacturing standard for visibility distance with high and low beam settings. See *Jones*, 2015 U. S. Dist. LEXIS at *13-14 (III) (B) (2) (allowing accident reconstruction expert to testify "regarding the sight distance of a commercial motor vehicle using its high beams"; defendant's arguments about expert's failure to measure the headlights of the truck at issue or an exemplar truck went to credibility of the expert's opinion, not his reliability).

2. Hart contends that the trial court erred by granting summary judgment in favor of the defendants because genuine issues of material fact exist with regard to whether Phung should have seen Hart and could have avoided hitting her through the exercise of ordinary care. We agree.

"Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." (Citation and punctuation omitted.) *Spires v. Thomas*, 362 Ga. App. 344, 349 (2) (866 SE2d 856) (2021). In this case, Phung admitted in one portion of his deposition that he "saw

13

them" when he was traveling in the right lane and also that he could have stopped in time to avoid hitting the man if he had remained in the right lane. Based upon this testimony alone, a genuine issue of fact exists as to whether Phung saw Hart and could have stopped in time. While Phung also testified that he never saw Hart before hitting her, his self-conflicting testimony, for which he has offered no reasonable explanation, must be construed against him. See *Stone v. Dayton Hudson Corp.*, 193 Ga. App. 752, 755 (2) (388 SE2d 909) (1989). We therefore reverse the trial court's grant of summary judgment in favor of the defendants.

*Judgment affirmed in part, reversed in part. Barnes, P. J., and Hodges, J., concur.*