A07A0920. SHIVER v. GEORGIA & FLORIDA RAILNET, INC.
(652 SE2d 819)

RUFFIN, Judge.

Ray Shiver brought an action pursuant to the Federal Employers' Liability Act ("FELA") against Georgia & Florida Railnet, Inc. ("G & F") claiming, inter alia, that he suffers from respiratory ailments as a result of his occupational exposure to "diesel exhaust fume[s] and hazardous dusts." The trial court granted G & F's motion in limine to exclude the testimony of one of Shiver's expert witnesses and granted partial summary judgment to G & F on Shiver's claim for his respiratory ailments.[1] Shiver appeals and, for reasons that follow, we affirm.

1. Shiver contends that the trial court erred in granting G & F's motion in limine to exclude the testimony of his treating physician, Dr. Ungarino. The trial court concluded that Dr. Ungarino's testimony would be inadmissible at trial under the standard set forth in OCGA § 24-9-67.1 and Daubert v. Merrell Dow Pharmaceuticals[2] because it showed only a temporal relationship between Shiver's alleged exposure to chemicals and the onset of his symptoms.

We review a trial court's ruling on a motion in limine for abuse of discretion.[3] "A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be

___

[1] G & F also filed a motion in limine to exclude the testimony of another expert witness, Alan Seagrave, but this motion was not specifically addressed in the order from which Shiver appeals. We find no indication in the record that the trial court ever ruled on this motion in limine, and thus there is no basis for us to consider Shiver's assertion that the trial court erred in granting the motion in limine as to Seagrave's testimony.

[2] 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993). See OCGA § 24-9-67.1 (f) (in applying OCGA § 24-9-67.1, Georgia courts "may draw from the opinions of the United States Supreme Court" in Daubert; Gen. Elec. Co. v. Joiner, 522 U. S. 136 (118 SC 512, 139 LE2d 508) (1997); Kumho Tire Co. v. Carmichael, 526 U. S. 137 (119 SC 1167, 143 LE2d 238) (1999), and other federal cases applying the standard announced in these cases).

[3] See Forsyth County v. Martin, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005).

admissible at trial."[4] Applying the *Daubert* standard, expert testimony is admissible if it is both relevant and reliable.[5] And the Georgia statute provides that expert testimony is admissible if:

(1) [t]he testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial;

(2) [t]he testimony is the product of reliable principles and methods; and

(3) [t]he witness has applied the principles and methods reliably to the facts of the case.[6]

In a FELA case involving allegations of injury due to chemical exposure, the plaintiff must show specific causation through expert testimony.[7] Here, the trial court found that Dr. Ungarino's testimony was "not scientifically reliable under *Daubert* to establish *specific* causation" of Shiver's injury by the exposure he alleges. The trial court correctly identified two methods by which the plaintiff in a chemical exposure case may show specific causation in a manner that satisfies the *Daubert* standard: (1) "dose/response relationship" or "threshold phenomenon"; and (2) "differential diagnosis."[8]

Dr. Ungarino attempted to make a differential diagnosis, which is a "method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history."[9] Dr. Ungarino diagnosed Shiver as suffering from reactive airway disease ("RADS"), which he believed was due to chemical exposure, specifically diesel smoke. However, as the trial court points out, Dr. Ungarino based his conclusion on an incomplete medical history of Shiver, which did not include information about earlier lung-related illnesses. Dr. Ungarino was unaware of Shiver's previous chemical exposure while working for another railroad and Shiver's treatment by other physicians, including treatment for lung problems. Dr. Ungarino testified that chemical exposure earlier than

---

[4] (Punctuation omitted.) *Gwinnett County v. Howington*, 280 Ga. App. 347 (634 SE2d 157) (2006).

[5] See *Cotten v. Phillips*, 280 Ga. App. 280, 286 (633 SE2d 655) (2006).

[6] OCGA § 24-9-67.1 (b) (1)-(3).

[7] See *Lee v. CSX Transp.*, 233 Ga. App. 30, 31 (2) (503 SE2d 309) (1998).

[8] *Hardyman v. Norfolk & Western R. Co.*, 243 F3d 255, 260-265 (II) (B) (6th Cir. 2001).

[9] Id. at 260.

the one alleged could also have triggered RADS and that information about such an exposure "definitely would be helpful" to him in making his diagnosis.

Based on this testimony, we conclude that Dr. Ungarino did not satisfy the requirements for a reliable differential diagnosis, which would include considering "all relevant potential causes of the symptoms."[10] Dr. Ungarino was Shiver's treating physician, whose goal was to identify and treat his condition rather than isolate its cause. Because Dr. Ungarino did not rule out all other possible causes of Shiver's condition after considering Shiver's complete medical history, the trial court did not abuse its discretion in excluding his opinion.[11]

2. Shiver asserts that the trial court erred in granting G & F's motion for partial summary judgment on his claim for his respiratory ailments. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[12] On appeal from a grant of summary judgment, we view the evidence in a light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences that can be drawn from the record.[13]

The trial court granted partial summary judgment on Shiver's claim for respiratory ailments because it found that, without Dr. Ungarino's testimony, Shiver failed to provide evidence of causation, an essential element of his claim. Shiver argues that negligence is not an issue in this case because federal railroad safety regulations require that products of combustion be released entirely outside the cab of a train and "it is common knowledge that diesel exhaust fumes are dangerous to breathe." However, "[t]o prevail on a FELA claim, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation."[14] And Shiver seems to be confusing general causation — whether diesel fumes can cause respiratory problems — with specific causation — whether diesel fumes caused *Shiver's* respiratory problems. The plaintiff in a FELA case "bears the burden of proving medical causation" and

---

[10] Id.; see *Turner v. Iowa Fire Equip. Co.*, 229 F3d 1202, 1208-1209 (I) (8th Cir. 2000) (causation opinion was not based on a reliable differential diagnosis where medical expert "did not scientifically eliminate other potential causes"); compare *Mattis v. Carlon Electrical Products*, 114 FSupp.2d 888, 896 (D. S.D. 2000) (experts would be permitted to testify as to differential diagnosis of RADS where potential causes other than alleged chemical exposure were ruled out).

[11] See *Turner*, supra at 1209.

[12] See *Hall v. Norfolk Southern R. Co.*, 258 Ga. App. 712 (574 SE2d 902) (2002).

[13] See id. at 712-713.

[14] (Punctuation omitted.) *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (1) (465 SE2d 706) (1995).

"must provide expert medical testimony where the disposition of a medical question, as here, controls the resolution of the case."[15] "A railroad company is not an insurer in a FELA case."[16]

Here, Shiver has pointed us to no admissible medical testimony to support his claim that exposure to diesel fumes caused him to develop RADS. In the argument portion of his brief addressing this issue, he cites only Dr. Ungarino's testimony as evidence of causation.[17] Accordingly, we agree with the trial court that G & F was entitled to summary judgment on Shiver's claim for his respiratory ailments because he failed to produce evidence of an essential element of his case.[18]

3. Shiver also alleges in a separate enumeration of error that the trial court erred by "fail[ing] to apply the applicable 'federal law of causation' to this FELA case based not only on negligence, but on strict liability." But his argument supporting this enumeration contains only a discussion of various aspects of FELA and does not cite any specific errors made by the trial court. "In the absence of such reference [to the record], the Court will not search for or consider such enumeration."[19] And, as discussed in Division 2, the plaintiff asserting a FELA claim must still prove the elements of negligence to prevail.[20] We therefore find no merit to this enumeration of error.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED SEPTEMBER 24, 2007 —
RECONSIDERATION DENIED OCTOBER 15, 2007

*Burge & Burge, Frank T. Burge, Brimberry, Kaplan & Brimberry, Jerry W. Brimberry*, for appellant.

---

[15] *Lee*, supra.

[16] *Ga. Southern & Florida R. Co. v. Peters*, 284 Ga. App. 139, 145 (2) (643 SE2d 786) (2007).

[17] In the fact section of his brief, Shiver states that "[p]ulmonology, asthma[,] and allergy specialist, Mike Fowler, found that [Shiver] had 'Asthma/Reactive Airways Dysfunction' as a result of 'Occupational: Works at Railroad.'" But Fowler, a physician's assistant at an allergy clinic, testified that he did not know what caused Shiver's symptoms; he stated that "[i]t could be the workplace[,] [i]t could be anything and everything."

[18] See id.; *Bowles v. CSX Transp.*, 206 Ga. App. 6, 7 (2) (424 SE2d 313) (1992).

[19] Court of Appeals Rule 25 (c) (3) (i).

[20] See *Ga. Southern & Florida R. Co.*, supra at 144 (1) ("It is well established 'that nothing in the text or structure of [FELA] suggests that the standard of care to be attributed to either an employer or an employee is anything different than ordinary prudence under the circumstances.'").

*Langley & Lee, William H. Gregory II, Hall, Bloch, Garland & Meyer, John S. Stewart,* for appellee.